Argued February 19, affirmed March 10, reconsideration denied
April 16, petition for review denied May 13, 1975

## STATE OF OREGON, *Respondent, v.* TERRY LEE BRYANT (No. 86991), *Appellant.*

532 P2d 815

*John Henry Hingson III,* Oregon City, argued the cause and filed the brief for appellant.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

Defendant was convicted in a jury trial on a two-count indictment charging him with furnishing marihuana and LSD. ORS 167.207. Several assignments of error have been made. One merits discussion; it concerns defendant's request that testimony of his accomplice, given at the time a preliminary motion to suppress evidence was heard, should have been read to the jury. The accomplice was called as a witness during the trial and claimed his Fifth Amendment privilege against giving incriminating testimony; hence, he was unavailable as a witness.

The defendant was 20 years old and his accomplice, named Kelsay, was 16. Evidence was that two undercover police officers in downtown Portland saw defendant and Kelsay together at a time when they passed a "hash pipe" from one to another. They drove up to the pair and asked them if they knew where they could get some narcotics. The officers and the defendant agreed that defendant answered by saying, " 'yeah, I can get you all you want in Oregon City.' " Defendant and Kelsay got in the back seat

of the officers' car and they drove first to West Linn and, when the proper contact was not made for the drugs there, on across the Willamette River bridge into Oregon City where one or both of the accomplices saw in a bus a man they were looking for. Defendant stayed in the officer's car while Kelsay, with $20 of the officers' money, went to the bus and reappeared shortly after and gave marihuana and LSD to the officers. The officers then arrested defendant and Kelsay. In an arrest search a baggie of marihuana was found on defendant.

The preliminary motion to suppress necessarily was directed toward the marihuana found on the defendant. Defendant called Kelsay as a witness on the motion. Following is the pertinent part of the transcript:

"Q [Mr. Hingson, Defendant's Counsel:] Okay. On the ride from Portland to Oregon City, were you apprehensive for your safety?

"A [Kelsay:] Yeah, a little.

"Q. Why?

"A Because of the way they were talking, kind of.

"Q Who is they?

"* * * * *

"THE WITNESS: Okay. Because of the way they were talking.

"MR. HINGSON: Q The Policemen?

"A Yeah.

"Q How were they talking?

"A Oh, kind of like they were going to punch us out if we didn't get it for them.

"Q By 'it' you mean the narcotics or dangerous drugs?

"A Yeah.

"Q   By 'punch us out' you mean—
"* * * * *.

"MR. HINGSON: Okay. Just one thing here.

"Q   What did 'punch it out' mean to you?

"A   Beat us up.

"MR. HINGSON: No further questions."

The prosecutor had objected to this line of questioning.

Defendant's attorney contends that the testimony by Mr. Kelsay was additional proof of the defendant's contention that he was entrapped by the police officers and that inasmuch as Kelsay claimed his privilege not to testify at the trial the defendant was entitled to have this evidence read to the jury.

We do not agree that the evidence was competent.

Defendant's contention was that he and Kelsay, so they could get a free ride to their homes in Oregon City, led the officers to believe they could get narcotics in Oregon City but they had no intention of going through with their agreement to get the narcotics. When the officers started talking tough to them defendant asserts that he became afraid and that his fear of the officers was what caused him to become involved. As the state argues, this sounds more like duress than it does entrapment. *See* ORS 161.270. Regardless, our primary reason for affirming the trial court's rejection of the transcript at trial is that the prosecutor objected on the basis of relevance to Kelsay's testimony in the suppression hearing. The court generally agreed with the prosecutor's objection but finally allowed defense counsel's persistent efforts to put the evidence in the record. The prosecutor, consistent with his contention that the evidence was ir-

relevant, did not cross-examine Kelsay on the subject, so he never was cross-examined thereon.

■■ It is true that when a witness is unavailable by reason of claiming the Fifth Amendment privilege, if he has formerly given *relevant testimony* under oath and there has been opportunity for cross-examination, his testimony may be read to the jury. *State v. Rawls*, 252 Or 556, 563, 451 P2d 127 (1969). This is the general rule. *See* Annotation, 45 ALR2d 1354 (1956) and 40-48 ALR2d Later Case Service 540 (1969). Here, for good reason, there was no cross-examination because the subject was obviously irrelevant. The usual context of this situation is one where the prosecution is trying to get the evidence in. Here, the reverse is true. But each side in a criminal prosecution has a right to cross-examine adverse witnesses. Further, after the trial judge hearing the motion to suppress had allowed Kelsay to testify over the prosecution's relevancy objection about the alleged threats, he clearly told defense counsel that entrapment is a defense for the jury, and was to be presented at the time of trial. That is what we held in *State v. Folsom*, 1 Or App 404, 406-07, 463 P2d 381 (1970):

> "* * * A motion to suppress is not the proper procedure for raising and deciding entrapment in a criminal case * * *.

> "We adhere to the procedure, urged by the state, that evidence of entrapment be presented in the trial before the jury. If the facts are sufficiently clear to show entrapment as a matter of law, the court can terminate the case. If the facts are conflicting the court can submit the issue to the jury."

■ Thus, when defense counsel called Kelsay as a witness on the motion to suppress and insisted on asking questions irrelevant to that hearing, the prose-

cutor quite properly objected and refused cross-examination on the irrelevant subject. Both because of the relevancy question, and because defendant tried to impose an incorrect procedure, there was no cross-examination and hence the transcript of Kelsay's challenged testimony was inadmissible on defendant's trial.

Affirmed.

SCHWAB, C. J., Concurring.

I concur in the majority opinion. However, I wish to add that in my opinion, even assuming the testimony in question were otherwise admissible, it was not relevant in the case at bar. Both at trial and on appeal the only relevance claimed for it by the defendant was that it was evidence of entrapment. As I read the testimony its only relevance would be on the issue of duress as distinguished from entrapment. Duress and entrapment involve totally different states of mind. Entrapment deals with the cause of a criminal state of mind; duress negates a criminal state of mind.